MATTER OF MARIN

In Deportation Proceedings

A-14226796

*Decided by Board March 10, 1970*

Respondent's criminal convictions may be used as a ground for his deportation under section 241(a)(4) of the Immigration and Nationality Act even though at the time of the convictions respondent and the sentencing judge were unaware of the recommendation against deportation provisions of section 241(b)(2) of the Act.*

CHARGE:

Order: Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of two crimes after entry: petty theft and burglary.

ON BEHALF OF RESPONDENT:
Joseph S. Hertogs, Esquire
580 Washington Street
San Francisco, California 94111

Donald L. Ungar, Esquire
517 Washington Street
San Francisco, California 94111
(Brief filed)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Stephen M. Suffin
Trial Attorney
(Brief filed)

The special inquiry officer certified his order terminating deportation proceedings. We find the alien deportable.

The question is whether an alien's criminal conviction may be used as a basis for his deportation if he did not know that he could have made a timely application to the sentencing court for a recommendation against deportation pursuant to section 241(b)(2) of the Act, 8 U.S.C. 1251(b)(2). We answer the question in the affirmative.

Section 241(b) states that the law requiring the deportation of an alien convicted of a crime involving moral turpitude shall not apply (1) if the alien obtains a pardon, or (2) if the sentencing court "shall make, at the time of first imposing judgement or

---

* Affirmed. See 438 F.2d 933 (C.A. 9, 1971).

passing sentence, or within thirty days thereafter, a recommendation" that the alien be not deported.

Respondent, a 24-year-old male, a native and citizen of El Salvador, was admitted for permanent residence on May 29, 1964. Conceding that he was convicted of two crimes involving moral turpitude after his entry, he contends that he is not deportable. He maintains that since, at the time of the convictions, neither he, his representative, nor the courts were aware that the courts could recommend against his deportation under the authority contained in section 241(b)(2) of the Act, the congressional scheme provided for the deportation of aliens was frustrated and the convictions cannot be used to deport him. The special inquiry officer sustained the contention. The Service, by brief and at oral argument, requested that the special inquiry officer's order be reversed. Counsel, by brief and at oral argument, requested that no change be made in the order of the special inquiry officer.

Respondent was convicted for petty theft on August 16, 1966 (Ex. 2), and for burglary, second degree on January 10, 1969 (Ex. 3). The order to show cause is based on these convictions.[1] The record establishes that at the time of the convictions, neither the respondent, his attorneys, nor the judges who presided were aware that the respondent's immigration status was in jeopardy by reason of the convictions. The judges and respondent stated that they were not aware of the existence of section 241(b)(2) at the time of the convictions and there was no discussion within the time limits provided by law concerning a recommendation against deportation.

The special inquiry officer's comprehensive review of judicial and administrative decisions dealing with the power of the court to make a timely recommendation against deportation revealed none which held that ignorance of the power prevents the use of a conviction as the basis for a deportation order. The basis for the special inquiry officer's original approach is a line of decision starting with *Gubbels* v. *Hoy*, 261 F.2d 952 (9 Cir., 1958). Thes cases hold that since Congress made the recommendations agains deportation and intrinsic part of the deportation process, the lac of capacity in a convicting tribunal to make a recommendatic

---

[1] Respondent was also convicted of what appears to be two counts of pe theft on June 7, 1967 (Ex. 4). He also admitted that he was convicted burglary in September 1969 (pp. 16-17). There was no application fo recommendation against deportation in connection with these convictions. convictions occurred in courts provided under the laws of the State of C fornia.

prevents the conviction from being used as the basis for a deportation order. The special inquiry officer reasons that the lack of an opportunity to obtain a recommendation because of the incapacity of the court is, in effect, no different than the lack of an opportunity to ask for a recommendation which occurs when the court, the alien, and his representatives are unaware of the provisions of section 241 (b) (2) of the Act.[2]

Approaching it from another aspect, the special inquiry officer points out that since the alien's ability to ask the court to make a recommendation against deportation is a "right", and since a "right" can be given up only by an intelligent waiver, it follows that an alien unaware that he possesses the "right" cannot make an intelligent waiver of it, and to use a conviction so obtained would violate due process.

The special inquiry officer has shown that a serious recurrent problem exists because judges, lawyers, and aliens are so frequently unaware of the recommendation provisions during the period statutory limitations permit effective action. However, we cannot accept his thoughtful solution for we find no authority for it in either the language of the law or in the interpretations of the law considered as a whole.

Certainly, the language of the law does not suggest that utilization of a conviction as the basis for the deportation of an alien requires the alien to be informed by the sentencing court that he has the right to ask for the recommendation against deportation. Judicial and administrative interpretations, when considered as a whole, do not show it has been so interpreted. In fact, the authority is to the contrary. That at the time of sentencing, the aliens were unaware they had the opportunity to ask the court for a recommendation is apparent from a series of cases dealing with aliens who attempted to obtain a recommendation against deportation after the passing of the statutory time. Nevertheless, the reviewing courts refused to give validity to late recommendations and permitted the convictions to be used as the basis for the deportation of the aliens, *U.S. ex rel Klonis* v. *Davis*, 13 F.2d 630 (2 Cir., 1926) is an example. There, a timely application for a

---

[2] Counsel believes that *Gubbels, supra*, turned not on lack of capacity of the military court to make a recommendation, but on the fact that because of its organization, the alien could not have effectively obtained a recommendation. As we read the case, the organization of the military court was merely one of the factors that persuaded the circuit court that a military court has no capacity to make the recommendation. The Supreme Court's comment on *Gubbels, supra*, indicates that the military court lacked capacity, *Costello* v. *INS*, 376 U.S. 120, 127, note eleven (1964).

recommendation was not made because the alien's attorneys I not known of his alienage and the danger of his being deport They learned of this after the statutory time had run. They tained a *nunc pro tunc* amendment of the sentence with the 1 ommendation that the alien be not deported. The immigration ficials refused to honor the recommendation. On review district court held that the recommendation did not bar depo1 tion. The circuit court approved. It held that it could not inter late in the law a provision that the recommendation could made within 30 days after the effect of the sentence was reali2

Several courts have indicated the absence of any obligation a sentencing court to inform an alien that he has the opportur to ask for a recommendation. *Todaro* v. *Munster*, 62 F.2d 963 Cir., 1933), cert. denied 289 U.S. 738, involved a review of a portation order based on a narcotic conviction. By way of dict the court stated that as long as the recommendation was made, it was immaterial whether or not a sentencing court an erroneous impression as to its power to recommend aga deportation.

In *U.S. ex rel. Durante* v. *Holton*, 228 F.2d 827 (7 Cir., 19! cert. denied 351 U.S. 963, the court stated that there was no c upon a sentencing court to advise a convicted alien of the pc bility of deportation that might result from the criminal con tion. The court stated that a judgment of conviction otbained : result of a guilty plea in a court which had not informed alien that the conviction might be made a basis for his depo tion had not been obtained without due process of law.

In *Joseph* v. *Esperdy*, 267 F. Supp. 492 (S.D.N.Y., 1966), alien's deportation was sought because of a narcotic convic obtained on a plea of guilty. The alien maintained that the viction was void because he had not been advised that his cor tion would subject him to deportation. The court stated (p. 4 that even in a federal court, where the full range of conseque had to be set out, it seemed absurd to expect a judge to explai each "defendant who pleads guilty the full range of *colla1* consequences of his plea and, indeed, to anticipate what those lateral consequences are. Nothing more should be expected oi State court" (emphasis in original).

It is true, as the special inquiry officer states, that many c on the section are concerned with the issue of the timelines the recommendation against deportation and not with the si cance of the lack of knowledge; yet, as we pointed out, the al lack of knowledge, which was apparent in most of the cases

not prevent the court from ruling against the alien, nor did the line of cases on which the special inquiry officer relies repudiate the cases concerned with the time limitations.

Moreover, Congress must have been aware of the many decisions in which, despite an alien's failure to seek a recommendation because of his ignorance of the possibility, his conviction was made the basis for an order of deportation. Yet, although Congress revised the section in 1952 and 1956, it took no steps to eliminate the problem presented here. Congressional acceptance of the situation is some evidence that Congress did not intend that a conviction could not be used as the basis for deportation unless it was shown that the convicted alien was aware of the opportunity to obtain a recommendation that the law offered him.

In *U.S. ex rel. Circella v. Sahli,* 216 F.2d 33 (7 Cir., 1954), cert. denied 348 U.S. 964, the alien contended that use of his 1916 conviction as the basis for an order of deportation was a denial of due process because, since the conviction occurred before the 1917 Act authorized courts to make recommendations, it deprived him of the opportunity to ask for a recommendation that aliens had who were convicted after the 1917 Act became effective. The court rejected the contention.

We have some additional grounds for our conclusion. The wording of section 241 (b) (2) and judicial interpretations reveal that it was the intent of Congress to have the matter of a recommendation settled within a 31-day period including the date of the passing of sentence. To make ignorance a material matter would nullify the limitation, for such a conclusion might require reopening of the criminal case and extension of the power of the court beyond the time provided by Congress.[3]

The cases based on *Gubbels, supra,* did not deal with the issue before us. They concerned aliens who did not have the opportunity of successfully applying for a recommendation against deportation. In the instant case, the alien had the opportunity. There is no evidence he was misled by the Government. His failure to take advantage of the application because of his ignorance is not excusable. See *Lockhart v. United States,* No. 21,311 (9 Cir., 12/18/69) (ignorance that failure to take administrative appeal would preclude judicial review did not excuse the failure).

Moreover, to explore the question whether a conviction should

---

[3] At the hearing, counsel contended that the alien was forever nondeportable by reason of a conviction entered without knowledge of the possibility that he could apply for a recommendation against deportation (p. 7). At oral argument, counsel indicated that the defect might be cured by a motion.

501

or should not have been accompanied by a recommendation against deportation violates the long established rule that a collateral attack on a criminal conviction will not be permitted in a deportation proceeding. We are bound by the conviction as it stands, *Matter of T—*, 3 I. & N. Dec. 641 (BIA, 1949).

As to the constitutional issue, if one is presented, we have no power to pass on it, *Matter of L—*, 4 I. & N. Dec. 566 (BIA, 1951). We note for the record the Service contention that Congress did not grant a "right" but a "privilege" and therefore no constitutional issue is involved.

To accept the special inquiry officer's position would result in a situation where an alien could be better off if he did not seek a recommendation at the time of sentencing. Later, he could attempt to prove that he was ignorant of his right to apply at the time of sentencing. If the "defect" is not curable, he would have frustrated the congressional intent to deport convicted aliens. If the "defect" is curable, action would be required that would involve courts and administrative officials in litigation. It is difficult to believe Congress contemplated this.

The appellate trial attorney has pointed out that the respondent is not remediless. He can eliminate the convictions for deportation purposes if he obtains a pardon, section 241(b)(1) of the Act.

**ORDER** The order of the special inquiry officer is withdrawn. The case is returned to the special inquiry officer for the entry of an appropriate order.